UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TONTALEA B.,

               Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

---

22-CV-00215-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 12)

Plaintiff Tontalea B.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 7) is granted, and defendant's motion (Dkt. No. 10) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB and SSI on July 9, 2018, and July 13, 2018, respectively, with an alleged onset date of June 2, 2018. (Administrative Transcript ["Tr."] 21, 530-43). The claims were initially denied on September 28, 2018. (Tr. 21, 361-82). Plaintiff filed a timely request for an administrative hearing before an administrative law judge ("ALJ"). (Tr. 385-401). On May 11, 2021, a video hearing was held by ALJ Scot Gulick, during which Plaintiff participated, with counsel. (Tr. 36-73). A vocational expert ("VE") also testified at the hearing. The ALJ issued an unfavorable decision on June 21, 2021. (Tr. 18-35). The Appeals Council ("AC") denied Plaintiff's request for review on January 26, 2022. (Tr. 1-7). This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

Preliminarily, the ALJ found Plaintiff's last insured date to be June 30, 2021.  (Tr. 23).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 2, 2018, the alleged onset date.  (Tr. 23).  At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder; posttraumatic stress disorder; bipolar I disorder; generalized anxiety disorder; substance abuse disorder; and alcohol use disorder.  (Tr. 24).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 24-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but could only perform simple, routine and repetitive tasks not at a production rate pace; is able to interact with supervisors, coworkers and the public occasionally; and make simple work-related decisions. (Tr. 26-28).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 28).  At step five, the ALJ found that there are jobs that exist in significant numbers

in the national economy that Plaintiff can perform.  (Tr. 29).  Therefore, the ALJ found that Plaintiff is not disabled.  (Tr. 30).

IV.    _Plaintiff's Challenge_

Plaintiff argues that the case must be remanded because the AC committed reversible error in rejecting, without explanation, a retroactive functional medical opinion from Plaintiff's treating nurse practitioner ("NP").  The Court agrees.

The ALJ made his decision in this case without the benefit of _any_ medical opinion evidence whatsoever, not even any medical opinions from the state agency review consultants.  (Tr. 28).  Instead, he determined the Plaintiff's RFC based on the raw medical data. However, he offered no explanation tethering the medical data to his RFC finding or the limitations he included in the RFC.  The ALJ simply stated an RFC, then summarized the medical evidence. While summarizing the evidence, the ALJ interpreted it according to his own lay judgment without any functional medical opinion that could translate the raw medical data into work-relevant limitations. The ALJ's failure to explain how he tied the RFC to the record evidence was reversible error. _See Anthony T. v. Comm'r of Soc. Sec._, 2021 WL 3884229 (W.D.N.Y. Aug. 31, 2021)(remanding where ALJ did not explain the "tether" between the RFC's limitations and the evidence) (citing _Jordan v. Berryhill,_ 2018 WL 5993366, *3 (W.D.N.Y. Nov. 15, 2018); _Annis v. Comm'r of Soc. Sec.,_ 2019 WL 6875231, *10 (W.D.N.Y. Dec. 17, 2019) ("There must be some identifiable rationale for the conclusion. The ALJ should explain why he came up with his conclusion. Accordingly, the Court finds that remand is warranted on this point."); _Hayes v. Comm'r of Soc. Sec.,_ 2020 WL 728271, *3 (W.D.N.Y. Feb. 13, 2020) ("[T]he ALJ failed to rely on medical opinion that could bridge the gap between the clinical findings and specific

functional limitations. . . . [I]t is clearly established that 'the ALJ may not interpret raw medical data in functional terms,' and that is what the ALJ did here") (internal citation omitted) (quoting *Johnson v. Comm'r of Soc. Sec.,* 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018)); see also *Manson v. Colvin*, No. 7:15-CV-0676(GTS), 2016 WL 4991608, *11 (N.D.N.Y. Sept. 19, 2016) ("[T]he ALJ's RFC determination was not supported by substantial evidence because there was no acceptable medical source opinion indicating that Plaintiff could perform the physical requirements of the RFC.").

Moreover, in this case which involved severe mental impairments, the ALJ did not have the leeway to make any "common sense" interpretations of the medical evidence, as he might have with regard to physical impairments. "[T]he leeway given to ALJs to make "common sense judgments" does not typically extend to the determination of mental limitations, which are by their very nature "highly complex and individualized.'" *Lilley v. Berryhill,* 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018) (citing *Nasci v. Colvin*, 2017 WL 9021, at *9 (N.D.N.Y. Mar. 7, 2017) (because the determination of mental limitations is extremely complex, an ALJ's RFC finding relative to mental impairments cannot be rendered solely on common sense, but requires medical opinion evidence)).

After the ALJ's decision in this case on June 21, 2021, Plaintiff, on appeal, submitted to the AC, *inter alia*, a July 28, 2021, medical opinion from NP Megan Mogavero, who treated Plaintiff at Evergreen Health. (Tr. 105-12). NP Mogavero noted that she had treated Plaintiff from 2019 to the present for lower back pain and bipolar disorder. (Tr. 105). NP Mogavero noted that Plaintiff's symptoms included low back pain, numbness and burning, stiffness, spasms, and weakness in the legs. *Id.* She further noted that Plaintiff had difficulty walking, standing, or sitting for periods of time because of

increased pain, and that medications gave minimal relief. *Id.* NP Mogavero further stated that Plaintiff's medications could "increase dizziness and fatigue." *Id.*

NP Mogavero opined that depression and anxiety contributed to Plaintiff's physical conditions, and that her experience of pain, mental health symptoms or other symptoms was severe enough to interfere with the attention and concentration needed to perform even simple work tasks on a frequent basis. (Tr. 106). NP Mogavero further opined that although Plaintiff was capable of low stress jobs, she could sit only 30 minutes at a time; stand only 20 minutes at a time; sit for less than two hours; and stand/walk less than two hours total in an eight-hour workday. (Tr. 106-07). NP Mogavero also opined that Plaintiff needed periods of walking every hour for 10 minutes each; needed a job that permitted an at-will sit/stand option; and needed unscheduled breaks two to three times per shift for 20 minutes each. *Id.*

Moreover, NP Mogavero opined that Plaintiff could occasionally lift less than 10 pounds; rarely twist, stoop, and climb stairs; never crouch or climb ladders; and would miss more than four days of work per month. (Tr. 108). NP Mogavero also stated that these limitations had existed since 2016, due to back issues. (Tr. 112).

NP Mogavero's opinion is significantly more restrictive than the RFC determined by the ALJ. NP Mogavero opined that Plaintiff could sit, stand and walk, in combination, for less than four hours in an eight-hour workday – far short of full-time work requirements. See SSR 96-9p, 1996 WL 374185, *2 (S.S.A. July 2, 1996) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., *8 hours a day, for 5 days a week*, or an equivalent work schedule.") (emphasis added). Numerous other aspects of NP Mogavero's opinion were significantly more

restrictive, including that Plaintiff would need an at-will sit/stand option and that she would miss more than four days of work per month.

In upholding the ALJ decision, the AC found that NP Mogavero's opinion "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). No further explanation was provided by the AC for this determination.

It is well-settled that the Appeals Council ("AC") "must accept [] evidence [submitted to it] so long as it is new, material, and relates to the period on or before the date of the ALJ's decision." *Hightower v. Colvin*, 2013 WL 3784155, *3 (W.D.N.Y. July 18, 2013). NP Mogavero's medical opinion met these criteria as it was new, material and related to the relevant time period. NP Mogavero's opinion was issued on July 28, 2021, after the ALJ's decision, so it was new.  See *Brown v. Comm'r of Soc. Sec.*, 2019 WL 2441862, *4 (W.D.N.Y. June 12, 2019) ("[T]he Appeals Council erred by not considering Dr. Napoli's June 2016 opinion. No question exists that the opinion qualifies as "new," as it did not exist prior to the ALJ's April 2016 decision and contained information not previously provided by Dr. Napoli.").   The opinion was retroactive, as stated by NP Mogavero. (Tr. 112).   In addition, NP Mogavero noted she had treated Plaintiff since 2019, during the relevant time period to this claim and well before the ALJ issued his decision in this case. See *Hightower,* 2013 WL 3784155 at *3 (finding that "[a]dditional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition previously complained of by the plaintiff").   Thus, the AC was required to consider NP Mogavero's opinion.

The AC offered only boilerplate reasoning for rejecting NP Mogavero's treating opinion. This was error.  See *Fairweather v. Comm'r of Soc. Sec.,* 2019 WL 4643585, *3 (W.D.N.Y. Sept. 24, 2019) (holding that AC erred in rejecting treating therapist's opinion, even where it came from an "other source" and not even a physician, without adequately considering it, and rather rejecting it with conclusory and boilerplate reasoning); *Mendez v. Comm'r of Soc. Sec.*, 2019 WL 2482187, *5 (W.D.N.Y. June 14, 2019) (noting that "courts have also concluded that a cursory, formulaic denial by the Appeals Council under 20 C.F.R. § 416.1470(a)(5) requires remand to the Commissioner," and collecting cases); *Brown v. Comm'r of Soc. Sec.,* 2019 WL 2441862, *3 (W.D.N.Y. June 12, 2019) (finding that "the Appeals Council's cursory explanation for rejecting Dr. Napoli's June 2016 opinion does not provide 'good reasons' as required by the treating physician rule" and noting that the AC "was obligated to explain and provide 'good reasons' [under the old regulations] for failing to give controlling weight to [the treating physician's opinion] which . . . appears to conflict with the ALJ's [decision]").

For this Court to be able to make a meaningful review of the record, it needs either the ALJ or the AC to provide an explanation as to why NP Mogavero's significantly more restrictive medical opinion must be rejected or why, if accepted, it would not change the outcome in this case.  Right now, the Court has nothing.  This is problematic for several reasons.

First, the ALJ had no medical opinion evidence before him when he made his decision, which is problematic for the reasons stated above. The ALJ never had the opportunity to consider NP Mogavero's medical opinion.

Second, NP Mogavero's opinion is significantly more restrictive than the RFC found by the ALJ.  The ALJ found no physical limitations, and instead found that Plaintiff has the RFC to perform a "full range of work at all exertional levels." (Tr. 26).  In contrast, the limitations opined by NP Mogavero, if accepted, would seem to rule out an RFC of "full range of work."

Third, if all of NP Mogavero's opinion were accepted, especially the limitations that Plaintiff would need unscheduled rest periods; an at-will sit/stand option; and miss work four days a month, it is difficult for the Court to understand, without further explanation, why there would not be a reasonable probability of a different outcome.

In sum, at this time and on this record, this Court cannot find, without further explanation, that the ALJ's decision is supported by substantial evidence.  The case must therefore be remanded.[3]

---

[3] Counsel for the defendant makes arguments as to why NP Mogavero's opinion should be rejected, but those are *post hoc* arguments and must be rejected. *Black v. Berryhill*, 2018 WL 4501063, at *6 (W.D.N.Y. Sept. 20, 2018)(a reviewing court may not rely on *post hoc* rationalizations for agency action).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is granted and defendant's motion for judgment on the pleadings (Dkt. No. 10) is denied.  The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      April 30, 2024
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge